Filed 7/31/23  P. v. Frazier CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>JUSTIN WAYNE FRAZIER,<br><br>　　Defendant and Appellant. | D080296<br><br><br>(Super. Ct. No. SCD281915) |

APPEAL from a judgment of the Superior Court of San Diego County, Rachel Cano, Judge.  Affirmed as modified and remanded with directions.

Matthew A. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kathryn A. Kirschbaum and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.


Justin Wayne Frazier pled guilty to one count of diversion of construction funds over $2,350 (Pen. Code, § 484b) and one count of

misdemeanor contracting without a license (Bus. & Prof. Code, § 7028, subd. (a)).  Frazier was ordered to pay $33,325 in victim restitution and was placed on formal probation.

Frazier challenges two categories of probation conditions ordered by the trial court.  Those probation conditions concern (1) treatment, therapy, and counseling; and (2) the use of marijuana and participation in substance use treatment and recovery services.  Frazier contends that, under the specific circumstances of his case, those probation conditions do not satisfy the reasonableness requirement set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*) because they " 'require[ ] or forbid[ ] conduct which is not reasonably related to future criminality.' "  The People concede that some, but not all, of the probation conditions are invalid under *Lent*.

As we will explain, we conclude that to ensure that the order granting formal probation complies with the standards set forth in *Lent*, *supra*, 15 Cal.3d 481, (1) items 7.b, 14.a, and 14.c must be stricken from the order granting formal probation, and (2) the reference to "individual," "group," and "cognitive behavior" counseling programs must be stricken from item 7.d.

I.

FACTUAL AND PROCEDURAL BACKGROUND

As stated in the probation officer's report, in 2017, Frazier entered into contracts to perform swimming pool replastering work for three different customers, each of whom paid Frazier a substantial amount before the work was completed.  Frazier started the jobs by performing demolition work, but he failed to complete them, and he cut off contact with the customers and did not return any of their money.  According to Frazier, his intention was to finish the work he started, but he became ill and was unable to do so.  During

2

his plea, Frazier also admitted that he performed work outside the scope of his contractor's license.

On May 30, 2019, Frazier was charged with one count of theft from an elder or dependent adult over $950 (Pen. Code, § 368, subd. (d)); one count of grand theft (*id.*, § 487, subd. (a)); two counts of diversion of construction funds over $2350 (*id.*, § 484b); two counts of contracting without a license (Bus. & Prof. Code, § 7028, subd. (a)); and two counts of entering into improper home improvement contracts (*id.*, § 7159.5, subd. (a)(3)).

On October 27, 2020, Frazier pled guilty to one count of diversion of construction funds over $2350 (Pen. Code, § 484b), and one misdemeanor count of contracting without a license (Bus. & Prof. Code, § 7028, subd. (a)). The People dismissed the remaining charges.

On April 18, 2022, the trial court stayed imposition of sentence for two years, placed Frazier on formal probation, ordered victim restitution in the amount of $33,325, and imposed a number of probation conditions. The following probation conditions, comprising items 7 and 14.a to 14.c of the April 18, 2022 order granting formal probation, are at issue in this appeal:

"7.  TREATMENT, THERAPY, COUNSELING:

"b.  Participate in treatment, therapy, counseling, or other course of conduct as suggested by validated assessment tests.

"c.  Provide written authorization for the [probation officer] to receive progress and compliance reports from any medical/mental health care provider, or other treatment provider rendering treatment/services per court order under the terms of this grant of probation.

"d.  Attend and successfully complete [individual, group, anti-theft, cognitive behavior counseling program] . . . if directed by the [probation officer].  Authorize the counselor to provide

3

progress reports to the probation officer or court when requested; all costs to be borne by defendant.

[¶] . . . [¶]

"14. FURTHER CONDITIONS:

"a. No marijuana use at all even with a card/recommendation/ prescription, if directed by [probation officer].

"b. Participate in a substance use level of care assessment within 7 business days if directed by [probation officer].

"c. Enroll in & adhere to substance use treatment & recovery services, as clinically indicated if directed by [probation officer]."

Defense counsel specifically objected to the probation conditions comprising items 7 and 14.a to 14.c on the ground that they were not reasonable in the context of Frazier's case. The trial court overruled those objections. The trial court justified both sets of probation conditions on the ground that they would give the probation officer tools to use in the event Frazier was unable to comply with the conditions of probation.[1]

---

[1] Specifically, as to the conditions in item 7, the trial court stated that "if probation needs this as a tool because they see in Mr. Frazier the inability to comply with any of the conditions of probation and they might think it is cognitive behavior issue, that they have this as a tool if they choose to use that." As to the conditions in items 14.a to 14.c, the trial court stated, "if probation sees that he's not complying with conditions and suspects that it is because of the substance abuse issue, that this allows them the tool to be able to address that issue without having to come back to court and not having to do probation revocation here. And they just have the tool to address it immediately, if that comes up during probation."

4

II.

DISCUSSION

Frazier challenges the probation conditions comprising items 7 and 14.a to 14.c on the ground that they are unreasonable under *Lent, supra,* 15 Cal.3d 481, 486.

A.    *Applicable Legal Standards*

A condition of probation may be challenged on state-law grounds pursuant to the standards set forth in *Lent, supra*, 15 Cal.3d at page 486. Under *Lent*, a condition of probation is invalid if it imposes a term or condition that " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Ibid.*) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a . . . term.  [Citations.]  As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*).)  A trial court's application of the *Lent* test is reviewed for abuse of discretion.  (*Id.* at p. 379.)  "[A] reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable." (*People v. Moran* (2016) 1 Cal.5th 398, 403.)

Here, the People do not dispute Frazier's ability to satisfy the first and second prongs of the *Lent* test, as it is clear that the probation conditions that Frazier challenges have " 'no relationship to the crime of which the offender was convicted' " and " 'relate[ ] to conduct which is not in itself criminal.' "

5

(*Lent*, *supra*, 15 Cal.3d at p. 486.)  The dispute here centers on the third prong, namely, whether Frazier can establish that the conditions " 'require[ ] or forbid[ ] conduct which is not reasonably related to future criminality.' " (*Ibid.*)

Our Supreme Court discussed *Lent*'s third prong in *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*) in the context of a probation condition allowing the warrantless search of a juvenile probationer's electronic devices. As *Ricardo P.* explained, "*Lent*'s third prong requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Id.* at p. 1121.)  " '[C]onditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' . . . so long as they are 'reasonably directed at curbing [the defendant's] future criminality' . . . .  For example, courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense. . . . [¶]  Yet *Lent*'s requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.)  "*Lent* is an interpretation of the Legislature's requirement that probation conditions be 'reasonable.' [Citations.]  That qualification indicates some concern with the fit between the means and legitimate ends of probation conditions:  A probation condition that imposes substantially greater burdens on the probationer than the circumstances warrant is not a 'reasonable' one." (*Id.* at p. 1128.)  Because the electronics search condition in *Ricardo P.* imposed "a very heavy burden on privacy with a very limited justification," the "disproportion" led our Supreme Court to conclude that it was not " ' "*reasonably* related to future

6

criminality." ' " (*Id.* at p. 1124.) *Ricardo P.* rejected a rule that would "categorically permit any probation conditions reasonably related to enhancing the effective supervision of a probationer," as "almost any condition can be described as 'enhancing the effective supervision of a probationer.' " (*Id.* at p. 1127.)

B.     *The Probation Conditions in Item 7*

As we have explained, the probation conditions in item 7 require that Frazier:

> "b.  Participate in treatment, therapy, counseling, or other course of conduct as suggested by validated assessment tests.
>
> "c.  Provide written authorization for the [probation officer] to receive progress and compliance reports from any medical/mental health care provider, or other treatment provider rendering treatment/services per court order under the terms of this grant of probation.
>
> "d.  Attend and successfully complete [individual, group, anti-theft, cognitive behavior counseling program] . . . if directed by the [probation officer].  Authorize the counselor to provide progress reports to the probation officer or court when requested; all costs to be borne by defendant."

Frazier contends that these conditions impose a significant burden on his privacy interests as well as a possible financial burden.  He argues that item 7 "not only requires [Frazier] to participate in any 'course of conduct' as suggested by various assessment tests, but the cost of any treatment or therapy recommended must be borne by [Frazier] for the duration of the term of treatment recommended."  According to Frazier, "[t]here is nothing in the record demonstrating that [his] criminal history is in any way related to . . . a mental health . . . issue."  (Italics omitted.)  Citing *Ricardo P., supra,* 7 Cal.5th at page 1127, he argues that because there is no "nexus" between

mental health issues and his past or future criminality, the conditions in item 7 are "far too intrusive to make 'the burdens imposed by the condition . . . proportional to achieving some legitimate end of probation.' "

At sentencing, when asked by defense counsel to state the reason for imposing the conditions in item 7, the trial court explained that "if probation needs this as a tool because they see in Mr. Frazier the inability to comply with any of the conditions of probation and they might think it is cognitive behavior issue, that they have this as a tool if they choose to use that." The trial court's reasons for imposing the conditions in item 7 lack any specific connection to Frazier's situation, and are accordingly too "abstract or hypothetical" to survive scrutiny under *Ricardo P.* (*Ricardo P., supra,* 7 Cal.5th at p. 1121.)

On appeal, the People do not attempt to justify the conditions in item 7 based on the trial court's reasoning. Instead, the People focus on Frazier's specific history. The People argue that "[g]iven the seriousness of [Frazier's] theft-related crimes, the amounts taken (in excess of $30,000), and his prior criminal history involving theft, the trial court reasonably determined the probation officer should have the discretion to require anti-theft or other types of counseling based on the results of validated assessment tests and [Frazier's] demonstrated progress during the probationary period."[2]

Given Frazier's criminal history, the People's argument is persuasive insofar as it focuses on anti-theft counseling. However, the People have not identified anything in Frazier's history that would justify the privacy intrusion and potential financial burden associated with the other types of

---

[2] The criminal history to which the People refer is a criminal proceeding in which Frazier was charged in 2004 with grand theft based on an allegation that he stole $2,934 from his employer to pay a gambling debt, and later pled guilty to the charge that was reduced to a misdemeanor.

counseling identified in item 7.d.  We therefore conclude that only as to anti-theft counseling is there a sufficient nexus to Frazier's criminal history to make it reasonable under *Lent*, *supra*, 15 Cal.3d 481, for the trial court to authorize a counseling program in item 7.d.  Because there is no indication of any other mental health issue in Frazier's case, the trial court abused its discretion by imposing, in item 7.d, a probation condition requiring Frazier to participate in "individual," "group," and "cognitive behavior" counseling programs if directed to do so.

Similarly, item 7.b suffers from the same problem as item 7.d because it requires participation in *any* kind of treatment, therapy, or counseling suggested by an assessment test, not just anti-theft counseling.

As we read item 7.c, it requires Frazier to authorize progress and compliance reports only from medical/mental health care and treatment providers who are "rendering treatment/services per court order under the terms of this grant of probation."  As such, it is duplicative of the remaining requirement in item 7.d, as it relates to anti-theft counseling, that Frazier must "[a]uthorize the counselor to provide progress reports to the probation officer or court when requested."  Because it is duplicative of another provision, item 7.c imposes no additional burden on Frazier that would render it invalid under *Lent*, *supra*, 15 Cal.3d 481.

In sum, the order granting formal probation must be modified to (1) strike item 7.b; and (2) revise item 7.d to delete the reference to individual, group, and cognitive behavior counseling programs, but to retain the reference to anti-theft counseling programs.

C.    *The Probation Conditions in Items 14.a to 14.c*

As we have explained, the probation conditions at issue in item 14 require that Frazier:

"a. [Have] [n]o marijuana use at all even with a card/ recommendation/prescription, if directed by [probation officer].

"b. Participate in a substance use level of care assessment within 7 business days if directed by [probation officer].

"c. Enroll in & adhere to substance use treatment & recovery services, as clinically indicated if directed by [probation officer]."

The People concede that the trial court abused its discretion in imposing items 14.a and 14.c. They explain that those conditions are not warranted because "there is no indication of a history of substance abuse or treatment, or that his crimes were related to marijuana or any other substance." We accept the People's concession. (See *People v. Cruz* (2020) 54 Cal.App.5th 707, 712 [probation condition prohibiting marijuana use was invalid under *Lent, supra*, 15 Cal.3d 481, absent "some indication that appellant is predisposed or more likely to commit crimes when under the influence of marijuana."].)

The People point out that item 14.b is duplicative of another probation condition, item 6.r, which states that Frazier is required to "[p]articipate and comply with *any assessment program* if directed by the [probation officer]." (Italics added.) As the People explain, a "substance use level of care assessment" is simply one type of assessment, and thus is covered by the broader provision in item 6.r. In that light, the People argue, item 14.b imposes no additional burden on Frazier and therefore is not unreasonable under *Lent supra*, 15 Cal.3d 481.

Frazier responds that, in his view, the general reference to "assessment program[s]" in item 6.r does not encompass the more specific substance abuse assessment described in item 14.b. Specifically, although the relevant language appears in a court order, not a statute, Frazier cites the maxim of statutory construction under which a court will " 'avoid interpretations that

10

render any language surplusage.' " Frazier's argument regarding the scope of item 6.r is not persuasive. Item 6.r, on its face, is a broad *general* provision that sweeps within its scope any assessment program that a probation officer reasonably deems to be warranted, including the more *specific* type of assessment described in item 14.b. The language at issue is contained in a standardized form, on which a trial court has the option to select certain probation conditions and reject others. In that light, it is perfectly reasonable that there would be duplication or overlap in the content of some of the provisions and that there would be more general provisions, like item 6.r, that authorize *all* types of assessment programs, and more targeted provisions, like item 14.b, that authorize *specific* types of assessments.

We therefore conclude that item 6.r is a general provision that encompasses within its scope any assessment program that a probation officer has a rational basis to require, including a "substance use level of care assessment" as described in item 14.b.[3] Item 14.b accordingly imposes no additional burden on Frazier that is not already present in item 6.r, and does not impose an unreasonable burden within the meaning of *Lent*. We therefore reject Frazier's contention that we should strike item 14.b.

---

[3]    We note that a probation officer is not authorized to issue irrational directives. (*Olguin*, *supra*, 45 Cal.4th at p. 383.) Because the People have agreed that we should strike item 14.c, which will remove the authority of the probation officer to direct Frazier to enroll in substance use treatment and recovery services, it is less likely that there will be a rational reason for the probation officer to direct, pursuant to item 14.b, that Frazier undergo a substance use level of care assessment. If, however, a rational ground arises for the probation officer to direct Frazier to participate in a substance use level of care assessment, the probation officer will have the authority under either item 6.r or item 14.b to issue such a directive.

## DISPOSITION

We modify the order granting formal probation dated April 18, 2022, by striking items 7.b, 14.a, and 14.c. We further modify that order by striking the reference to "individual," "group," and "cognitive behavior" counseling programs from item 7.d, but we retain the reference to "anti-theft" counseling programs in item 7.d. The trial court is directed to prepare an amended probation order reflecting these modifications. As modified, the judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

12